IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JAY DOUGLAS BARKER,<br><br>Defendant. | Case No. 3:17-cr-71<br><br>**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR SENTENCE REDUCTION AND FOR APPOINTMENT OF COUNSEL** |

  The United States of America, by Drew H. Wrigley, United States Attorney for the District of North Dakota, and Jacob T. Rodenbiker, Assistant United States Attorney, hereby files this response in opposition to Defendant Jay Douglas Barker's pro se Motion for Sentence Reduction and for Appointment of Counsel filed June 22, 2020. (Doc. 52.) This is not a compassionate release motion.[1] Instead, he asks the Court to reduce his sentence of imprisonment on the ground that First Step Act's retroactive application of the Fair Sentencing Act triggers some relief for him—despite his having been convicted of Armed Bank Robbery rather than any drug trafficking offense, let alone one involving crack (cocaine base). And he seeks court-appointed counsel to assist him further on this claim. Because it is readily apparent from the record that the ground he presents to the Court affords him no relief and that he is not entitled under the law to the assistance of counsel in this matter, the Court should deny the Motion in its entirety.

---

[1] The United States reserves all arguments and requests the Court allow it to respond further if the Court liberally construes the Motion as seeking compassionate release.

I. **BACKGROUND**

    a. **Factual Background**

The following comes from the Presentence Investigation Report prepared in this case. (See Doc. 40 ¶¶ 3-6.) On March 8, 2017, an employee at the Citizens Community Credit Union in St. John, ND, called 911 to report a robbery that was just conducted by gun point. The investigation revealed that the defendant entered the Credit Union, pointed a gun at an employee and demanded all the money in the vault. The employee walked to the vault while the defendant held the gun to her back. She gave Barker the cash on top of the vault, but told him she did not have a key to enter the vault. They walked back to the front of the Credit Union, at which time he demanded money from the bank tellers. During the robbery, he kept repeating to the employees that they better not push any buttons or he would kill them all.

At one point during the robbery, another employee came out of the bathroom; when she realized what was happening, she pressed the silent alarm to alert law enforcement. After the defendant put all the cash into a bag, he left the bank. One of the employees walked towards the door to lock it, but the defendant came back inside and asked what she was doing. He then told her not to "try anything" and told them to wait five minutes or he would kill them all. The employee told Barker she was only going to lock the door. He then left, she locked the door, and another employee called 911. One of the employees recalled that after Barker left, all of the victims began screaming, sobbing, and panicking. She further described the incident as "utterly terrifying."

A short time after the robbery occurred, security from the Sky Dancer Casino contacted local law enforcement to report a vehicle matching the suspect's was parked in the employee parking lot. BIA officers responded and arrested the defendant on an outstanding Idaho warrant. Officers also saw a money bag from the Credit Union in plain sight within the defendant's vehicle. During a search of the vehicle, officers located the money bag containing cash, and a black Daisy Model 188 BB pellet gun. It was later determined that the defendant stole a total amount of $40,410 from the Credit Union. The full amount of cash stolen was recovered by law enforcement and later returned to the Credit Union.

During an interview with investigators later that same day, the defendant asked if his car had been searched, and then stated that officers will find the "smoking gun" and a pile of money that he did not get to count. Barker admitted that he robbed the bank because he lost all of his money at the casino. He had been staying with his elderly mother at her retirement home for around five months; the neighbor had given the defendant a BB gun to shoot at stray dogs that would often dig in their trash cans. Barker explained that he was tired of having money problems, so he took the BB gun, put on one of his mother's wigs, and robbed the bank.

### b. Procedural History

On March 15, 2017, a single-count indictment was filed in the U.S. District Court, Fargo, North Dakota, charging the defendant with Armed Bank Robbery, in violation of 18 U.S.C. §§ 2113(a) and 2113(d). (Doc. 2.) The indictment charged that on or about March 8, 2017, the defendant stole money from the Citizens Community Credit Union

3

and that during the robbery, the defendant possessed a weapon, which he used to threaten the lives of four employees of the Credit Union. (Id.) A writ of habeas corpus was issued and the defendant was taken from state custody into federal custody on May 1, 2017. (Doc. 7.) An initial appearance was held on May 3, 2017, and the defendant was ordered to remain detained pending further proceedings. (Doc. 6.)

Following a continuance of the original trial date (Doc. 29), the defendant pleaded guilty to the single-count indictment before the Honorable Ralph R. Erickson, United States Circuit Judge for the Eighth Circuit, sitting by designation on November 28, 2017. (Doc. 33.) There was a written Rule 11(c)(1)(B) plea agreement filed that contained sentencing recommendations and contemplated guideline calculations. (Doc. 30.) At sentencing on March 21, 2018, Judge Erickson imposed 84 months of imprisonment followed by 5 years of supervised release, and pay a special assessment. (Doc. 50.) Barker's sentence was within the applicable Guideline range. (Doc. 51.) He did not appeal, nor has he failed any post-conviction motions prior to this one.

## II.   DEFENDANT HAS NO RELIEF UNDER THE LAW HE CITES

Because Barker was not convicted of drug trafficking, the interplay between the First Step Act and Fair Sentencing Act is of no consequence to his case. The First Step Act made Sections 2 and 3 of the Fair Sentencing Act of 2010 retroactive, meaning that crack defendants who received mandatory minimum sentences prior to August 3, 2010, which were subsequently lowered by the Fair Sentencing Act, could petition courts for relief. Section 404 of the First Step Act provides that a court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the

time the covered offense was committed." Pub. Law 115-391 (S. 401), 132 Stat. 5194 (enacted Dec. 21, 2018).

Section 2 of the Fair Sentencing Act had amended 21 U.S.C. § 841(b)(1)(A) to establish 280 grams instead of 50 grams as the quantity of crack establishing a 10-year mandatory minimum sentence and amended § 841(b)(1)(B) to set 28 grams instead of 5 grams as the crack threshold for a 5-year minimum. Pub. Law 111-220 (S. 1789), 124 Stat. 2372 (enacted Aug. 3, 2010). Section 3 of the Fair Sentencing Act eliminated a provision in 21 U.S.C. § 844(a), which had imposed a 5-year minimum term of imprisonment on individuals who possessed a certain amount of crack regardless of intent to distribute.

Given Barker's offense of conviction, the part of the First Step Act he references in the Motion, namely, the part relating to the retroactivity of the Fair Sentencing Act, has no bearing on his case. Moreover, 18 U.S.C. § 3582(c)(1)(B), which Barker also cites, is inapposite and does not authorize the Court to grant him any relief on grounds he identifies. Looking at the record of this case in light of the statutory provisions Barker references, it is clear that he is not entitled to any relief that he has requested.

### III. DEFENDANT HAS NO RIGHT TO COUNSEL IN THIS INSTANCE

Defendant requests the appointment of counsel for the purpose of assisting him with his motion for compassionate release. However, there is no requirement of appointment of counsel in this circumstance. First, with respect to the Constitution, a defendant has no Sixth Amendment right to counsel in connection with a Section 3582(c) motion. Courts of appeals addressing the issue have uniformly held that a defendant does

not have a Sixth Amendment right to counsel in connection with a Section 3582(c) motion filed after a defendant's direct appeal has concluded. See United States v. Tollefson, 853 F.3d 481, 485 (8th Cir. 2017) (holding defendant could not state valid claim for ineffective assistance because he "had no right to counsel during his postconviction sentence reduction proceedings"); United States v. Brown, 565 F.3d 1093, 1094 (8th Cir. 2009); United States v. Benson, 329 F. App'x 37, 38 (8th Cir. 2009); United States v. Harris, 568 F.3d 666, 669 (8th Cir. 2009) (affirming the judgment of the District Court for the Northern District of Iowa with respect to retroactive cocaine base amendment to United States Sentencing Guidelines).  See also United States v. Reddick, 53 F.3d 462, 465 (2d Cir. 1995); United States v. Hart, 331 F. App'x 972 (3d Cir. 2009); United States v. Legree, 205 F.3d 724, 730 (4th Cir. 2000); United States v. Whitebird, 55 F.3d 1007, 1011 (5th Cir. 1995); United States v. Forman, 553 F.3d 585, 590 (7th Cir. 2009), overruled on other grounds by United States v. Taylor, 778 F.3d 667 (7th Cir. 2015); United States v. Townsend, 98 F.3d 510, 512-13 (9th Cir. 1996); United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009); United States v. Webb, 565 F.3d 789, 793-95 (11th Cir. 2009).  Likewise, several district courts in the Eighth Circuit have held that a defendant has no Sixth Amendment right to counsel for a § 3582(c) proceeding. See Tollefson, 853 F.3d at 483 (District of North Dakota); Harris, 568 F.3d at 666 (Northern District of Iowa); Benson, 329 F. App'x at 37 (Eastern District of Arkansas); and Brown, 565 F.3d at 1093 n.2 (District of Minnesota).

 Moreover, a defendant has no statutory right to counsel in connection with a Section 3582(c) motion. The pertinent statutory provision, the Criminal Justice Act, 18

U.S.C. § 3006A(c), states in relevant part: "A person for whom counsel is appointed shall be represented at every stage of the proceedings from his initial appearance . . . through appeal, including ancillary matters appropriate to the proceedings." The courts have uniformly rejected the argument that a Section 3582(c) motion is an "ancillary matter" referenced in Section 3006A(c). To the contrary, the courts have consistently found that a Section 3582 proceeding is not an "ancillary matter" as set forth in Section 3006A, and have likewise held that a defendant does not have a statutory right to counsel in connection with a Section 3582(c) motion. See, e.g., Whitebird, 55 F.3d at 1010 (defendant has no statutory right to counsel in connection with a § 3582(c) motion because such a motion is not an "ancillary matter" under § 3006A); Reddick, 53 F.3d at 464-65 (same); cf. Burrell v. United States, 332 A.2d 344, 347 (D.C. 1975) (defendant has no statutory right to counsel in connection with motion to reduce sentence under Rule 35(b)).

    Notably, the inmate does not have a right to a hearing with regard to a motion for sentence reduction, bolstering the conclusion that there is no right to counsel. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." See Dillon v. United States, 560 U.S. 817, 827-28 (2010) (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification); United States v. Styer, 573 F.3d 151, 153-54 (3d Cir. 2009) (same).

The United States has not objected to the appointment of the Federal Public Defender's Office to represent inmates en masse for purposes of assessing and litigating eligibility for sentencing reductions based on a retroactive guideline amendment (such as Amendments 706 (2007), 750 (2011), and 782 (2014)), or, indeed, the provision of the First Step Act making retroactive the changes in the Fair Sentencing Act of 2010 concerning statutory penalties for crack cocaine offenses. That is because each of these projects is a one-time occurrence, requiring the simultaneous disposition of hundreds of motions based on the same body of law and straightforward facts, and the Court and all parties gain great efficiencies from the able assistance of the Federal Public Defender at such times.

But while he has asked for counsel to help him with this Motion, the defendant plainly does not qualify for relief. He presents an entirely different situation than a motion for relief under the Fair Sentencing Act retroactivity part or other parts of the First Step Act.[2] These circumstances do not warrant the creation of a new basis for the appointment of counsel in post-conviction litigation, outside the parameters of the Constitution and statutory authority. Counsel here could merely guide Barker on a fishing expedition for other forms of relief he might seek, with no chance that what he has actually sought would succeed. The United States opposes appointment of counsel here.

---

[2] A motion for compassionate release also presents an entirely different case than Fair Sentencing Act retroactivity motions. They are unique to each defendant, and may be presented at any time as the years pass; in fact, there is no statutory limit presently in place as to the number of compassionate release motions a defendant may file. But again, as stated in the opening paragraph, this is not a compassionate release motion.

## IV. CONCLUSION

For these reasons, this Court should deny the Motion (Doc. 52) in its entirety.

    Dated: July 2, 2020

                            DREW H. WRIGLEY
                            United States Attorney

            By:    /s/ *Jacob T. Rodenbiker*
                            JACOB T. RODENBIKER
                            Assistant United States Attorney
                            Quentin N. Burdick United States Courthouse
                            655 First Avenue North, Suite 250
                            Fargo, ND 58102-4932
                            (701) 297-7400
                            ND Bar No. 06497
                            Jake.Rodenbiker@usdoj.gov
                            Attorney for United States

## CERTIFICATE OF SERVICE

I certify that on July 2, 2020, I electronically filed this document with the Clerk of Court using the CM/ECF system.

I also certify that I have mailed this document by United States Postal Service to the following non-CM/ECF participant:

>Jay Douglas Barker, 16599-059
>FCI Edgefield
>Federal Correctional Institution
>P.O. Box 275
>Edgefield, SC 29824

>/s/ *Linda J. Collins*_____
>LINDA J. COLLINS
>Office of the United States Attorney